**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS M. EHLENBACH and<br>RENAE L. EHLENBACH, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, *and*<br>*doing business as* CENTERS FOR<br>DISEASE CONTROL AND<br>PREVENTION, and<br>ANGELA L. FUGO, *individually*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| ANGELA L. FUGO, *individually*, | ) |
| | ) |
| Cross Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| THOMAS M. EHLENBACH, | ) |
| | ) |
| Cross Defendant. | ) |

Civil Action No. 08-1100

Chief Judge Donetta W. Ambrose
Magistrate Judge Cathy Bissoon

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

## I.     <u>RECOMMENDATION</u>

It is respectfully recommended that Defendant United States of America's Motion to Dismiss Complaint Or, In The Alternative, For Summary Judgment (Doc. 33) be granted and that Defendant Angela L. Fugo's Motion for Certification (Doc. 35) be denied, as discussed below.

## II.      <u>REPORT</u>

<u>BACKGROUND</u>

A.      <u>Factual Background</u>

This is an action brought by Thomas Ehlenbach and Renae Ehlenbach against the United States of America d/b/a Centers for Disease Control ("United States" or "CDC") under the Federal Tort Claims Act, 28 U.S.C. § 2401, <u>et seq.</u> ("FTCA") and against Angela L. Fugo, a CDC employee.  (Compl. ¶ 1.)  Plaintiffs allege that on August 13, 2006, Ms. Fugo operated her car in "a negligent, careless and reckless manner" by driving it into the direct path of a motorcycle being operated by Plaintiff Thomas Ehlenbach with Renae Ehlenbach as a passenger. <u>Id.</u> at ¶ 17.  Plaintiff Thomas Ehlenbach, in order to avoid colliding with Ms. Fugo, applied his brakes and landed his motorcycle on its side.  <u>Id.</u> at ¶ 18.  Plaintiffs allege that, as a result of the accident, they suffered serious injuries.  <u>Id.</u> at ¶¶ 21, 23-26.  Plaintiffs have brought claims against both the CDC and Ms. Fugo for negligence and loss of consortium.  (<u>See</u> <u>generally</u> Compl.)  Plaintiffs allege that Ms. Fugo was acting within the scope of her employment and that, therefore, the CDC is liable for her negligence pursuant to the FTCA.  <u>Id.</u> at ¶ 22.  Alternatively, Plaintiffs allege that if Ms. Fugo was not acting within the scope of her employment, she is individually responsible for her own negligence.  <u>Id.</u> at ¶ 39.

Defendant Fugo is a Communications and Information Specialist with the CDC and works in Atlanta, Georgia.  (Def's Stmt of Facts in Def's Mem. of Law in Support of Second Mot. to Dismiss (Doc. 34) (hereinafter, "Def's Facts") at ¶ 1.)  Defendant Fugo's responsibilities include, among other things, providing leadership in the development, implementation, and monitoring of health and safety information throughout the CDC workforce.  <u>Id.</u> at ¶ 3.  As part of her duties, she occasionally makes site visits to CDC facilities throughout the country.  <u>Id.</u> at

¶ 4.  Defendant Fugo is supervised by Dr. L. Casey Chosewood, who has been the Director of the CDC's Office of Health and Safety Issues since 2005.  Id. at ¶ 5.

Dr. Chosewood scheduled a CDC team to conduct site visits at the CDC facilities located in the Morgantown, WV and Pittsburgh, PA areas during the week of Monday, August 14, 2006 and Friday, August 18, 2006.  Id. at ¶ 6.  Dr. Chosewood assigned the site visits to Defendant Fugo and four other CDC employees.  Id. at ¶ 7.  The team was scheduled to visit a CDC facility in Morgantown, WV from Monday, August 14, 2006 through Wednesday, August 16, 2006.  Id. at ¶ 8.  After completing their work in Morgantown, the team was scheduled to travel to the Pittsburgh area to visit a CDC facility there from Wednesday, August 16, 2006 through Friday, August 18, 2006.  Id.  After completing these two site visits, the team was scheduled to travel back to Atlanta on Friday, August 18, 2006.  Id.

Relevant to this case is Defendant Fugo's travel to the Pittsburgh area to conduct these site visits.  The CDC arranged to have all five employees travel to Morgantown, WV via Pittsburgh, PA given the absence of a direct flight from Atlanta to Morgantown, WV.  Id. at ¶ 10. The employees were to fly into Pittsburgh International Airport on Sunday, August 13, 2006 so that they could attend meetings scheduled for Monday morning in Morgantown, WV.  Id. at ¶ 9. Defendant Fugo, however, flew to Pittsburgh a day earlier – on Saturday, August 12, 2006 – because she is originally from the area and wished to visit with family and friends.  Id. at ¶ 11. Because the CDC employees needed transportation from the Airport to Morgantown, WV, the CDC also authorized the rental of a van.  Id. at ¶ 14; see also Att. A. to Def. CDC's Br. in Support of Motion (Doc. 34) at 0001 ("Travel Request"), 0002a-0002b ("Travel Order").) Ms. Fugo was responsible for obtaining the van at the Airport and driving herself and her colleagues to Morgantown, WV.  Id.; see also id. at ¶ 16.

Ms. Fugo arrived at the Pittsburgh International Airport on Saturday, August 12, 2006. Id. at ¶ 20.  Upon her arrival at the Airport, Ms. Fugo obtained the rental vehicle – a van.  Id. Upon obtaining the van, she determined that it was too large for her personal needs and requested a smaller car from the rental agency.  Id.  The agency provided her with a Chevy Cavalier for one day at no additional cost to the Government.  Id.  Ms. Fugo then embarked on a journey in the government rental vehicle (the Chevy Cavalier) which began with her driving north to Erie, Pennsylvania and then to Lackawanna, New York.  Id. at¶ 21.  After spending Saturday night in New York, on Sunday morning (August 13), Ms. Fugo went to Lake Erie. Id. at ¶¶ 21-22.  In the early afternoon, Ms. Fugo proceeded back to the Pittsburgh International Airport to return the Chevy Cavalier, obtain the van and meet her colleagues so that they could journey to Morgantown, WV.  Id. at ¶ 22.  On her way to the Airport, Ms. Fugo got into the traffic accident underlying Plaintiffs' action.

On September 12, 2008, the U.S. Attorney for the Western District of Pennsylvania issued a scope of employment certification wherein she found that Ms. Fugo "was not acting in the scope of her employment with the United States Department of Health & Human Services, Centers for Disease Control at the time of the incident out of which the Plaintiffs' claims arose." (Att. A to Def's Mem. of Law in Support of Second Mot. to Dismiss (Doc. 34) at 0033.)

**B.**     **Procedural Background**

Defendant Fugo filed an Answer to Plaintiffs' Complaint and also filed a counterclaim against Plaintiff Thomas Ehlenbach.  (Doc. 7.)  On October 3, 2008, Defendant CDC, pursuant to Federal Rule of Civil Procedure 12(b)(1), moved to dismiss Plaintiffs Complaint against it on the ground that the Court lacked subject matter jurisdiction.  (Doc. 14.)  In its Motion, Defendant CDC argued that Ms. Fugo was not acting within the scope of her employment and, therefore, Defendant CDC could not be sued under the FTCA, which provides only a limited waiver of

- 4 -

sovereign immunity for injuries caused by a government employee who was acting within the scope of his or her employment.  (See generally id.)  Plaintiffs and Defendant Fugo all opposed the Motion.  On November 24, 2008, this Court issued a Report and Recommendation, recommending that Defendant CDC's Motion to Dismiss be denied without prejudice.  (Doc. 28.)  On December 18, 2008, the District Court adopted this Court's Report and Recommendation and denied Defendant CDC's Motion to Dismiss without prejudice.  (Doc. 30.)

On February 13, 2009, after a period of discovery on the scope of employment issue, Defendant CDC renewed its Motion to Dismiss, reasserting its prior argument that this Court lacks subject matter jurisdiction.  (Doc. 33.)  Both Defendant Fugo and Plaintiffs again oppose the Motion.  Also on February 13, 2009, Defendant Fugo filed a Motion for Certification, asking that this Court certify that she was acting within the scope of her employment at the time of the accident.  (Doc. 35.)  Both Defendant CDC's Motion to Dismiss and Defendant Fugo's Motion for Certification are now ripe for disposition.[1]

## ANALYSIS

### A.    Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a plaintiff's claim or complaint for lack of subject matter jurisdiction.  This Court previously concluded that Defendant CDC is making a factual (rather than facial) attack on Plaintiffs' Complaint.  As such, Plaintiffs bear the burden of persuasion to show that jurisdiction exists.  CNA v. United States, 535 F.3d 132, 145 (3d Cir. 2008).  In addition, "'no presumption of truthfulness attaches to the allegations of the plaintiff.'"  Id. (quoting CNA v. United States, No. 06-126, 2006 WL 3366147, at *1 (W.D. Pa. Nov. 20, 2006) (Ambrose, C.J.)).  Rather, "[b]ecause at issue in a factual

---

[1]    Defendant Fugo's Motion for Certification is largely identical in content to her Brief in Opposition to Defendant CDC's Motion to Dismiss.  The Court herein primarily cites to Defendant Fugo's Brief in Opposition.

12(b)(1) motion is the trial court's [actual] jurisdiction – its very power to hear the case – [rather than simply the sufficiency of plaintiff's allegations] there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen v. First Federal Savings and Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977). To this end, the Court may consider evidence outside of the pleadings. Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Thus, in the context of a Rule 12(b)(1) motion, the Court is "permitted to make factual findings, beyond the pleadings, that [are] decisive to determining jurisdiction." CNA, 535 F.3d at 145. The Court of Appeals for the Third Circuit has made it clear that the scope of employment inquiry under the FTCA, such as the one before the Court, is a jurisdictional one and should be decided under the standards of Rule 12(b)(1). Id. at 144-45.

The FTCA waives the federal government's sovereign immunity in limited circumstances. See 28 U.S.C. § 1346. Under the FTCA, the United States may be liable for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Id. at § 1346(b)(1). Under the 1988 amendments to the FTCA, commonly known as the Westfall Act, the remedy provided under the FTCA is the exclusive remedy available for an injury or loss caused by "any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 2679(b)(1). Also under the Westfall Act, the Attorney General is charged with the authority to certify whether the employee was acting within the scope of his or her employment. If the Attorney General certifies that the

employee was acting within the scope of his or her employment, then the action proceeds against the government.  Id. at § 2679(d)(1)-(2).  If, however, the Attorney General (as in the case before this Court) "has refused to certify scope of office or employment . . . , the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment."  Id. at § 2679(d)(3).  A "plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it."  Melo v. Hafer, 13 F.3d 736, 747 (3d Cir. 1994).

Through their respective motions, both Defendant CDC and Defendant Fugo raise a dispute over whether Ms. Fugo was acting "within the scope of her office or employment" at the time of accident on August 13, 2006.  If the Court finds that Ms. Fugo was acting within the scope of her employment, then this Court will have jurisdiction over the underlying action brought by Plaintiffs against Defendant CDC under the FTCA.[2]

### B.    Scope of Employment

The determination of whether Ms. Fugo's conduct was within the scope of employment is governed by the substantive law of the state in which the accident occurred, which in this case is Pennsylvania.  Pennsylvania has adopted Section 228 of the Restatement (Second) of Agency for the relevant standard for determining whether an employee is acting within the scope of employment.  CNA, 535 F.3d at 146; Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) (citing Butler v. Flo-Ron Vending Co., 557 A.2d 730, 736 (Pa. Super. 1989)).  Under Section 228, an employee's conduct is within the scope of employment if, inter alia:  "'(a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and

---

[2]        Because both Defendants raise the same fundamental issue in their respective motions, the Court's analysis is equally applicable to both motions and resolution of one necessarily resolves the other.

space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master.'"[3]  Id.

(quoting Restatement (Second) of Agency § 228 (1958)).

Defendant CDC argues that Ms. Fugo was not acting within the scope of her employment

because she was engaged in a personal trip having nothing to do with CDC business.  Plaintiffs

and Defendant Fugo take the contrary position, asserting that Ms. Fugo was responsible for

picking up the rental vehicle and driving her colleagues in that vehicle and that she was on her

way to picking up her colleagues at the Airport at the time of the accident.  As such, they argue

that Ms. Fugo's use of the government rental vehicle was authorized, presumably without

limitation as to personal or business use.  The Court agrees with Defendant CDC.  Specifically,

the Court finds and concludes that Ms. Fugo's conduct at the time of the incident – driving the

government rental vehicle back to the Pittsburgh International Airport – was not within the scope

of her employment.  The undisputed record evidence establishes that Ms. Fugo's use of the

government rental vehicle was outside the authorized time and space limits of her employment.

In addition, Ms. Fugo did not re-enter the scope of her employment during her drive back to the

Airport to meet her colleagues.

Ms. Fugo's travel documents establish that her duties for the CDC began at the time that

she met her colleagues at the Airport.  Defendant Fugo's Travel Request provides that the

temporary duty dates for the trip were August 13, 2006, through August 18, 2006.  (Def. CDC's

Mem. of Law in Support of Mot. to Dismiss ("CDC's Br.") (Doc. 34), Att. A at 0001

(hereinafter, "Travel Request").)  The Travel Request additionally provided that Ms. Fugo would

be traveling to Pittsburgh one day earlier – on August 12, 2006.  The Request further provided

---

[3]     There is a fourth factor, which is neither applicable nor at issue here, where the employee is alleged to have
used intentional force.  See Restatement (Second) of Agency § 228 (providing that conduct also is within
the scope of employment "if force is intentionally used by the servant against another, [and] the use of
force is not unexpected by the master.").

that a rental car would be needed, with the stated "justification" as follows:  "Rental Car (Van) needed to transport all occupants (entire team) from airport to TDY [e.g., temporary duty] (several NIOSH facilities in Western PA /Northern WV)."  Id.

Ms. Fugo's Travel Order similarly noted that she would be arriving in Pittsburgh on August 12, 2006, departing on August 18, 2006, and noted the use of a rental car.  (CDC's Br. (Doc. 34), Att. A. at 0002a-0002b ("Travel Order").)  As to the rental car, the Travel Order specifically provided:

> TRAVELER [Fugo] **WILL TRANSPORT HERSELF AND 5 OTHER CDC EMPLOYEES BETWEEN PITTSBURGH AND MORGANTOWN FOR SITE VISITS** (PITTSBURGH-MORGANTOWN-PITTSBURGH AGAIN).  THERE IS NO DIRECT CONTRACT FLIGHT TO MORANTOWN [sic] AND THE MOST ACCESSIBLE TRANSPORT IS BY SURFACE.  **A VAN IS NEED[ED] FOR THE NUMBER OF PERSONS TRAVELING WITH MATERIALS FOR THE TWO SITES.**

Id. (emphasis added).

In September 2006 – after completion of the trip and in response to a request for clarification regarding her "actual duty dates" and whether the use of the rental car was for personal purposes – Ms. Fugo informed her assistant as follows:  "Official time for me started @ 6:15pm evening Sunday, Aug 13 when I left PA residence to pick up compadres Sam, Dave, and Narvaez at the airport and ended at 4:30 pm when I left the Pittsburgh offices after my last conversation with Barbara Heirendt's team in the NIOSH Office."  (CDC's Br. (Doc. 34), Att. A at 0002e.)  Although she did not clarify whether she used the rental car for personal purposes, Ms. Fugo explained that there were no additional car rental charges for her use of the car on Saturday as "[t]he full car rental charge would have been the same 5, 6 or 7 days."  Id.  She did note, however, that an extra $3 charge assessed by the car rental agency "should not be paid by

the Govt." because that charge was personal.[4]   Id.   Based on Ms. Fugo's response, her Travel

Order was amended to note that Ms. Fugo's "duty actually began on August 13 instead of the

12th.  Itinerary was adjusted to reflect this."  (CDC's Br. (Doc. 34), Att. A. at 0006.)  Thus, not

only do the Travel Request and Travel Order show that Ms. Fugo's early arrival was for personal

reasons, but Ms. Fugo admits that her official CDC duties began after 6:00 pm on Sunday,

August 13.

In addition, the travel documents clearly delineate the authorized use of the government

rental vehicle.  The documents provide that Ms. Fugo was responsible for picking up the rental

vehicle at the Airport and driving herself and her colleagues from the Airport to Morgantown,

West Virginia.  Despite suggestions to the contrary, these documents notably do not provide her

with permission to use the rental vehicle for personal purposes.  Indeed, nothing in the travel

documents contemplate Ms. Fugo picking up the rental vehicle, driving away from the Airport

for her personal business and then returning to the Airport to pick up her colleagues.  The travel

documents do not even mention Ms. Fugo's personal journey, let alone a directive or

authorization for her to drive the government rental vehicle from another location in and around

Pittsburgh, PA to meet her colleagues to then drive them to Morgantown, WV.

Additionally, although Ms. Fugo might have believed that she could use the vehicle for

her personal trip, Ms. Fugo notably testified that she did not recall asking her supervisor,

Dr. Chosewood, for permission to use the rental vehicle for her personal trip, or otherwise telling

him that she would be so using the rental car.  (Deposition of Angela L. Fugo ("Fugo Dep.")

(Doc. 39, Ex. B) at 66, 71.)  Dr. Chosewood affirmatively testified that Ms. Fugo never asked

him for permission to use the government rental vehicle for her personal trip and otherwise had

---

[4]         In her deposition, Ms. Fugo explained that this charge was in connection with her personal accumulation of
frequent flier miles.  (Deposition of Angela L. Fugo ("Fugo Dep.") (Doc. 39, Ex. B) at 87.)

no knowledge that she was going to do so.  (Deposition of L. Casey Chosewood ("Chosewood Dep.") (Doc. 34, Att. C) at 18-19, 60-61, 65.)

Moreover, the Court finds that the sheer extent of Ms. Fugo's personal travels places Ms. Fugo's use of the rental vehicle even further beyond the scope of her employment, regardless of the fact that she may have been en route to the Airport to begin her duties.[5]  The Court again observes that the record is devoid of any evidence establishing that the CDC authorized or even knew of Ms. Fugo's intentions to use the government rental vehicle for personal purposes on this particular trip, let alone the extent of those personal travels.  Despite this, Plaintiffs and Ms. Fugo repeatedly note that Ms. Fugo is from the Pittsburgh area (Pls' Opp. Br. (Doc. 39) at 13-14; Def. Fugo's Opp. Br. (Doc. 38) at 9-10), presumably suggesting that her use of the rental to travel to visit family and friends in and around Pittsburgh was authorized. Ms. Fugo, however, testified that she did not stay in the Pittsburgh area at all, having traveled approximately 140 miles north from the Airport to Erie, Pennsylvania and then, from Erie, approximately another 80 miles east to Lackawanna, New York.  (Fugo Dep. (Doc. 34, Att. B) at 30-31.)  After spending Saturday night in Lackawanna, NY, Ms. Fugo testified that, on Sunday, August 13, 2006, she traveled to Lake Erie and that she may "have stopped in Erie again."  Id. at 31-32.  It was only after these additional stops on Sunday, August 13 that Ms. Fugo proceeded to the Airport to meet her colleagues "[b]efore the[ir] seven-o'clockish arrival," which would be in time "to meet them and whisk ourselves to Morgantown from there."  Id. at 32.  Ms. Fugo's accident occurred in Mercer County, Pennsylvania approximately 60 miles north of the Airport

---

[5]     To further place Ms. Fugo's conduct outside of what was authorized is the fact that she swapped the authorized rental – a van – for a car.  Dr. Chosewood testified that he did not specifically authorize the rental of a smaller vehicle.  (Chosewood Dep. (Doc. 34, Att. C) at 65.)  Although not dispositive in and of itself, the fact that Ms. Fugo unilaterally made this exchange – and was in the exchanged vehicle at the time of the accident – becomes more significant on the scope of employment issue when it is coupled with the absence of evidence that the use of the rental for personal purposes was even authorized.

during her trip back from Lackawanna, New York.  These facts demonstrate that Ms. Fugo's

personal trip, which was over 200 miles away from the Airport and over 400 miles roundtrip,

was more than a mere slight or incidental deviation from CDC business, but rather was well

beyond the authorized time and space limits.  The Pennsylvania Superior Court's decision in

Shuman Estate v. Weber, 419 A.2d 169, 171-72 (Pa. Super. Ct. 1980) is instructive on this point.

      In Shuman Estate, the Pennsylvania Superior Court, applying Section 228 of the

Restatement, addressed whether an employee was acting within the scope of his employment

when he deviated from his work-related path to engage in a personal matter.  Id. at 172-73.  The

employee of an automobile body shop was tasked with returning a customer's car to the

customer's business premises at the end of his work day.  Id. at 171.  The court observed that this

plan was hatched as "convenience for both [the employee and the customer] as it saved [the

customer] a trip to [the body shop] and provided [the employee] with transportation to his

home," which was located close to the customer's business.  Id. at 171-72.  The evidence

revealed that the employee used the car after work, without permission, to visit his mother and

children and to meet friends.  The employee, on his way to the customer's business at 4:00 a.m.

(well after the close of the business), got into an accident and wrecked the customer's car.  Id. at

172.

      The court, relying on a Pennsylvania Supreme Court case, concluded that the employee

was not acting within the scope of his employment at the time of the accident, despite the fact

that he was en route to completing a work-related task, e.g. returning the customer's car to the

customer's business premises.  Id. (citing Solomon v. Commonwealth Trust Co., 100 A. 534 (Pa.

1917)).  The court stated that the employee's personal "journey was far beyond any authorized

time and space limits that can be implied from the request to return the car" where the distance

- 12 -

the employee traveled "was more than twice that of the expected trip."  Id. at 173-74.  See also

Keener v. Dep't of Army, 498 F. Supp. 1309, 1314-15 (M.D. Pa. 1980) (in an FTCA action,

finding that Army Sergeant, despite being authorized to use the government vehicle, was not

acting within the scope of employment at the time of a traffic accident in that vehicle, which

occurred after the sergeant had left in the middle of an out of town conference to get something

to eat, because driving under the circumstances was unauthorized and "most important[ly]"

because the "the primary purpose of the trip was for the personal pleasure of the three sergeants

and any purpose to serve the interest of the United States was 'too little actuated' to impose

liability"), aff'd, 659 F.2d 1068 (3d Cir. 1981); Croes v. U.S., 726 F.2d 31, 33 (1ˢᵗ Cir. 1984) (in

an FTCA action, the Court of Appeals for the First Circuit concluded that employee was not

acting within the scope of his employment at the time of a traffic accident that occurred while

employee was on his way to the second day of out of town work meetings after a detour for

personal purposes that took the employee in the opposite direction of the meeting; the court

stated that its decision was "influenced by the length of the detour (about 80 miles roundtrip), by

the government's minimal interest in the [employee's personal business], as contrasted with the

major motivation of accommodating the convenience of the employee, and by the fact that the

accident occurred while [the employee] was still quite far [e.g., 17 miles] from. . .the departure

point for his detour.").

     Plaintiffs and Ms. Fugo repeatedly rely on "the fact that [Dr. Chosewood] knew she was

traveling to Pittsburgh a day early to visit with family and/or friends as she had done in the past"

to seemingly suggest that her past conduct or the CDC's knowledge of her plans somehow

authorized her to utilize the government rental for personal purposes.  (Pls' Opp. Br. (Doc. 39) at

14.)  The Court finds Ms. Fugo's prior travels and the CDC's knowledge of the same irrelevant

to the issue of whether at the time of the accident on Sunday, August 13, Ms. Fugo was acting within the scope of her employment, particularly given that Ms. Fugo concedes that she cannot remember using a government rental vehicle for personal purposes on any such prior trip. (Fugo Dep. (Doc. 39, Ex. B) at 17.) Moreover, the CDC's mere knowledge of Ms. Fugo's plans to travel to Pittsburgh a day earlier hardly amounts to an authorization (express or implied) to use the government rental for her personal pleasure, particularly the extent for which she used the rental vehicle.[6] See Shuman Estate, 419 A.2d at 174 (rejecting argument that past permission provided the employee with permission on the occasion in question, stating that "even if an employer habitually allows his employee to use an instrumentality for personal use or gives express permission for him to do so, this fact will not, of itself, subject the employer to liability."); Williams v. Rene, 72 F.3d 1096, 1100-01 (3d Cir. 1995) ("it is important to note . . . the distinction between an employer's permission to drive a company car for personal errands and directions for the use of the automobile on the employer's business. The mere fact that [the employer] had allowed its employees to use its vehicles to bring other employees to work in the past did not establish that [the employee] was within the scope of employment.").

The Court also finds unpersuasive the arguments relative to the Government's travel regulations. Plaintiffs assert that "the Government's own travel regulations recognize that a government-procured rental may be used by a government employee for personal usage and thus allows the exact usage that Defendant Fugo put the government-procured rental vehicle to use

---

[6]    Plaintiffs and Ms. Fugo also argue that to the extent Ms. Fugo's conduct was unauthorized, it became authorized under the test set forth in Section 229 of the Restatement. Though Section 229 is unnecessary to reach the conclusions set forth herein, the Court observes that many of the ten Section 229 factors are already discussed herein and, in fact, weigh against a finding that Ms. Fugo's unauthorized conduct became authorized, including the following: whether the act is commonly done by employees (factor (a)); the time, place and purpose of the act in question (factor (b)); the previous relations between the employee and the employer (factor (c)); whether the act is "outside the enterprise" of the employer (factor (e)); whether the employer has reason to expect that the act will be done (factor (f)); and the extent of the departure from the normal method of getting the authorized act completed (factor (i)). See Restatement (Second) of Agency § 229.

- 14 -

for."  (Pls' Opp. Br. (Doc. 39) at 14.)  Whether an employee may use a government rental for

personal purposes is not the issue before this Court.  Nevertheless, as Plaintiffs fully

acknowledge, those same travel regulations provide that additional expenses incurred during

such personal use may not be claimed for reimbursement.  Id.  More notably, those same travel

regulations further provide that "employees should be aware that the **Government will deny**

**liability for any loss or damage** to a vehicle rented for official business purposes using a

government travel charge card **if that loss/damage arises from activities outside the scope of**

**official business travel**."  (Doc. 34, Att. A at 0075) (emphasis added).  Thus, although the

government may contemplate personal use of a government rental, it also contemplates that

employees will be responsible for damage arising from "activities outside the scope of official

business travel."  Quite simply, the government's travel policies relative to whether a

government rental vehicle may be used for personal purposes are irrelevant to whether such

personal use is within the scope of employment.

Equally irrelevant is Plaintiffs and Defendant Fugo's argument as to mileage

reimbursement.  Specifically, Defendant Fugo asserts that the "receipt of mileage allowance is a

significant factor in determining that an employee was in the scope of employment at the time of

an accident" and cites to Kemerer v. United States, 330 F. Supp. 731 (W.D. Pa. 1971).  (Def.

Fugo's Opp. Br. (Doc. 38) at 15.)  The receipt of mileage allowance, however, is inconsequential

here where the only mileage reimbursement to speak of is the reimbursement Ms. Fugo received

for mileage she accrued driving from her home in Atlanta, Georgia to the airport in Atlanta in her

own vehicle.  See id. at 15-16.  The accident, however, did not occur while Ms. Fugo was driving

in her own vehicle and receiving mileage reimbursement as in Kemerer.  There is no evidence

that Ms. Fugo was reimbursed for mileage while driving in the government rental vehicle on her

personal excursion to Erie, PA and Lackawanna, NY or on her trip back to the Pittsburgh

International Airport.  Thus, Ms. Fugo's receipt of mileage reimbursement for her trip to the

airport in Atlanta is irrelevant to the issue of whether she was acting within the scope of her

employment at the time of her accident in the government rental vehicle on her way to the

Pittsburgh airport.

In a final effort to establish that Ms. Fugo was within the scope of her employment,

Plaintiffs and Defendant Fugo urge this Court to ignore Ms. Fugo's significant detour (and,

indeed, treat it as though it were incidental or slight) and conclude that she was in the scope of

her employment because she was "en route" to the Airport to pick up her colleagues for a CDC

mission.  In effect, they argue that Ms. Fugo – regardless of whether she was within the scope of

her employment on Saturday or Sunday morning – had "reentered" the scope of her employment

once she embarked on her return trip to the Airport.  (Pls' Opp. Br. (Doc. 39) at 19; Def. Fugo's

Opp. Br. (Doc. 38) at 16.)  The Court disagrees.

"Pennsylvania courts have taken a rather strict view of when an employee is deemed to

have reentered the scope of his employment."  Shuman Estate, 419 A.2d at 171-72.  In

concluding that the employee had not reentered the scope of his employment when he began his

trip back to the customer's business, the court opined:

> Our supreme court held that **when a driver** does more than merely
> deviate from the most direct route and instead **departs on a 'joy
> ride' entirely for his own pleasure, the entire trip until return
> to the authorized final destination must be treated as part of
> the joy ride.**  Thus, even though the accident occurred but a few
> blocks from the final destination, the court found the employer was
> not liable.
>
>         *      *      *
>
> [The employee] had not returned to the authorized final
> destination, and the testimony completely lacks the necessary

> details to infer that [the employee] had returned to the point of
> original deviation.

Id. at 174-75 (emphasis added) (citing Solomon v. Commonwealth Trust Co., 100 A. 534 (Pa. 1917)).

  Ms. Fugo undoubtedly deviated from her CDC mission, e.g., transport herself and her colleagues to Morgantown, West Virginia for CDC business, to engage in personal visits with friends, which notably were well outside the vicinity of Pittsburgh and the Pittsburgh Airport. Not only was the deviation generally outside of the scope of employment, but she did not re-enter that scope simply by being "en route" to the Airport at the time of the accident. As Ms. Fugo still remained some 60 miles north of the Airport (which, contrary to Plaintiffs and Defendant Fugo's suggestions, is not an insignificant distance), she had neither returned to her final destination – the Airport – nor her original point of deviation – also the Airport.[7]

  Based on the undisputed evidence, the Court finds that although the CDC authorized Ms. Fugo to drive herself and her colleagues from Pittsburgh International Airport to Morgantown, WV, it did not authorize her to utilize the government rental vehicle for her personal pleasure. At the time the traffic accident occurred, Ms. Fugo was still engaged in her personal trip, which was well beyond the time and space of her employment and not a mere "slight" or "incidental" deviation. Thus, Ms. Fugo was not acting within the scope of her employment and Defendant CDC cannot be held responsible for her conduct.[8] Accordingly, the Court lacks jurisdiction over Plaintiffs' claims against Defendant CDC.

---

[7]   The Superior Court also noted that some Pennsylvania courts have used a more liberal approach by "retracing the [personal] journey to the point of original deviation." Id. at 175. Here, the point of original deviation is identical to the final destination, e.g., the Pittsburgh International Airport. Thus, regardless of whether the strict or liberal approach is employed, the result remains the same.

[8]   Plaintiffs and Defendant Fugo understandably rely on Dr. Chosewood's completion of Standard Form 91 wherein he indicated that the underlying accident occurred "within the employee's scope of duty" as she was "enroute" to the Airport. On the basis of Dr. Chosewood's completion of this Form, this Court recommended that limited discovery be completed on the narrow scope-of-employment issue in the hopes

**CONCLUSION**

For all of the reasons stated above, Defendant United States of America's Second Motion To Dismiss Complaint Or, In The Alternative, For Summary Judgment (Doc. 33) should be granted and Defendant Angela L. Fugo's Motion for Certification (Doc. 35) should be denied. Because Defendant Angela L. Fugo was not acting within the scope of her employment, the Court lacks subject matter jurisdiction to hear Plaintiffs' claims against Defendant United States of America and, therefore, recommends that such claims against the United States be dismissed with prejudice.

Additionally, with the recommended dismissal of Plaintiffs' claims against the United States, the Court observes that the only defendant remaining in this action is Defendant Fugo. It is unclear at this stage whether the Court has subject matter jurisdiction over the remainder of this litigation. Although subject matter jurisdiction premised on diversity of citizenship under 28 U.S.C. § 1332 may exist, Plaintiffs' submissions to date raises some issue. For example, on the one hand, Plaintiffs have asserted in their Complaint that this Court has jurisdiction over their claims against Defendant Fugo on the basis of diversity of citizenship under 28 U.S.C. § 1332. (Compl. ¶¶ 39, 46.) However, in prior briefing to this Court, Plaintiffs have suggested that this Court would lack jurisdiction if Defendant CDC's Motion to Dismiss was granted. (Pls' Opp. Br. to Def. CDC's Mot. to Dismiss (Doc. 19) at 11.) Moreover, in their Complaint, Plaintiffs have not alleged the amount in controversy and have alleged only their residency (as opposed to citizenship) and Defendant Fugo's "last known address" (as opposed to her citizenship). (Compl. ¶¶ 4-8.) Therefore, should this Report and Recommendation be adopted as the opinion

---

that discovery would shed light on the issue. (Doc. 28.) The parties have now completed discovery on the issue, including depositions of Ms. Fugo and Dr. Chosewood. As discussed supra, a review of the entire record, which is now fully developed on the issue, leads to the conclusion that Ms. Fugo was not acting within the scope of her employment. Dr. Chosewood's indication on the Form that Ms. Fugo was acting within the "scope of duty" becomes less probative when weighed against his own deposition testimony, as well as Ms. Fugo's deposition testimony and the relevant travel records.

of the Court, Plaintiffs should stand prepared to discuss whether this Court has subject matter jurisdiction to hear the claims remaining against Defendant Angela L. Fugo.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by August 21, 2009.  Responses to objections are due by September 2, 2009.

s/ Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

August 4, 2009

cc (via email):

Dallas W. Hartman, Esq.
Paul D. Kovac, Esq.
Stephen J. Summers, Esq.